# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | |
|---|---|
| **ANNA MILLS,** | |
| **Plaintiff,** | **Case No. 1:18-cv-01446-JKB** |
| **v.** | |
| **FORMER POLICE CHIEF KELVIN SEWELL,** *et al.* | |
| **Defendants.** | |

## DEFENDANT KELVIN SEWELL'S MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT

Lloyd Liu
Federal Bar No. 18500
Tel: (202) 470-1689
lloyd@coburngreenbaum.com
Barry Coburn
Federal Bar No. 07910
Tel: (202) 643-9472
COBURN & GREENBAUM PLLC
1710 Rhode Island Ave, N.W.
2nd Floor
Washington, DC 20036

*Counsel for Defendant Kelvin Sewell*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ALLEGATIONS OF THE COMPLAINT ............................................................................. 2

STANDARD ....................................................................................................................... 3

ARGUMENT ...................................................................................................................... 4

    The Federal Claims ..................................................................................................... 4

    The State Claims ....................................................................................................... 13

    Lack of Notice ........................................................................................................... 15

CONCLUSION ................................................................................................................. 17

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................... 1, 3, 7

*Ashton v. Brown*, 660 A.2d 447 (Md. 1995) .................................................................. 6, 16

*Aulson v. Blanchard*, 83 F.3d 1 (1st Cir. 1996) ................................................................. 1

*Baker v. McCollan*, 443 U.S. 137 (1979) .......................................................................... 4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................... 1, 3

*Bell v. Wolfish*, 441 U.S. 520 (1979) ............................................................................... 10

*Bradley v. Rell*, 703 F. Supp. 2d 109 (N.D.N.Y. 2010) ................................................... 12

*Brosseau v. Haugen*, 543 U.S. 194 (2004) ........................................................................ 5

*Carder v. Steiner*, 170 A.2d 220 (Md. 1961) .................................................................. 14

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995) .............................................................. 12

*Cullinan v. Abramson*, 128 F.3d 301 (6th Cir. 1997) ........................................................ 9

*Estelle v. Gamble*, 429 U.S. 97 (1976) ............................................................................ 13

*Francis v. Giacomelli*, 588 F.3d 186 (4th Cir. 2009) ......................................................... 4

*Graham v. Connor*, 490 U.S. 386 (1989) ........................................................................ 10

*Green v. Brooks*, 725 A.2d 596 (Md. Ct. Spec. App. 1999) .............................................. 6

*Groh v. Ramirez*, 540 U.S. 551 (2004) .............................................................................. 5

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ....................................................................... 4

*Harrison v. Prince William Cty. Police Dep't*, 640 F. Supp. 2d 688 (E.D. Va. 2009) ................. 6

*Heron v. Strader*, 361 Md. 258, 761 A.2d 56 (Md. 2000) ................................................. 6

*Hope v. Pelzer*, 536 U.S. 730 (2002) ................................................................................. 4

*Houghton v. Cardone*, 295 F. Supp.2d 268 (W.D.N.Y. 2003) ........................................ 12

*Huggins v. Prince George's Cty.*, 683 F.3d 525 (4th Cir. 2012) ...................................... 16

*James v. Prince George's Cty.*, 418 A.2d 1173 (Md. 1980) ............................................. 14

*Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246 (2d Cir. 2001) ................................... 12

*Kentucky v. Graham*, 473 U.S. 159 (1985) ..................................................................... 4

*Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992) ................................................... 9

*Martin v. Gentile*, 849 F.2d 863 (4th Cir. 1988) ........................................................ 13

*Maryland. v. Wallace*, 812 A.2d 291 (Md. 2002) ......................................................... 6

*McCoy v. Massachusetts Institute of Tech.*, 950 F.2d 13 (1st Cir. 1991) ...............................4, 8

*Mellen v. Bunting*, 327 F.3d 355 (4th Cir. 2003) ........................................................ 4

*Montgomery Ward v. Wilson*, 664 A.2d 916 (Md. 1995) ................................................. 6

*Morse v. Frederick*, 551 U.S. 393 (2007) ..................................................................... 5

*Nelson v. Carroll*, 735 A.2d 1096 (Md. 1999) ............................................................ 11

*Revene v. Charles Cty. Comm'rs*, 882 F.2d 870 (4th Cir. 1989) ...................................... 3

*Richardson v. McGriff*, 762 A.2d 48 (Md. 2000) ......................................................... 15

*Robinson v. Goff*, 517 F. Supp. 350 (D. Va. 1981) ...................................................... 6

*S.P. v. City of Takoma Park*, 134 F.3d 260 (4th Cir. 1998) ........................................... 9

*Tennessee v. Garner*, 471 U.S. 1 (1985) .................................................................... 10

*Thacker v. City of Hyattsville*, 762 A.2d 172 (Md. 2000). ............................................ 14

*Thomas v. City of Annapolis*, 688 A.2d 448 (Md. Ct. Spec. App. 1997)...........................14, 16

*Town of Port Deposit v. Petetit*, 688 A.2d 54 (Md. Ct. Spec. App. 1997)........................... 14

*United Black Firefighters v. Hirst*, 604 F.2d 844 (4th Cir. 1979) ................................... 4

*West v. Atkins*, 487 U.S. 42 (1988) ........................................................................... 4

*Wilson v. Layne*, 526 U.S. 603 (1999) ....................................................................... 4

**Rules**

FED. R. CIV. P. 8(a)(2) ........................................................................................... 7

# INTRODUCTION

The Complaint alleges Chief Sewell assaulted the plaintiff in connection with an unlawful detention but does not plead a single fact to show that he authorized, directed, or knew of the alleged assault. By the Complaint's own allegations, Chief Sewell was not even in the precinct when the fracas with two other officers, Officer Barnes and Detective Bailey, occurred. To put it charitably, the allegations regarding the detention itself (both the arrest and subsequent time in lockup) are scant as to Chief Sewell.

There are several bases for dismissal here: failure to plead the elements of the claims themselves as well as on grounds of qualified immunity both under Section 1983 and Maryland law. On all fronts, though, the plaintiff fails to meet the plausibility standard outlined in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

The plaintiff complains that Chief Sewell, along with two other police officers, unlawfully detained and battered the plaintiff. The Complaint, though, raises far more questions than it answers: the quintessential who, what, where, when, and why as to the elements comprising the plaintiff's claims. These questions are critical because the plaintiff's omissions are a fertile ground for rampant speculation.

The First Circuit has noted that the motion to dismiss standard does not force a court "to swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). That observation is apt here.

## ALLEGATIONS OF THE COMPLAINT

The allegations against Chief Sewell are as follows: On May 21, 2015, Chief Sewell requested that Ms. White and the plaintiff come to his office to mediate a dispute. Compl. ¶ 10, 12. The dispute was between the plaintiff and another person, Yolanda White. Compl. ¶ 11. At the time, Ms. White's daughter dated the plaintiff's son. *Id.* Chief Sewell allegedly was "intervening in the matter on behalf of Ms. White with whom he was engaged in a romantic relationship." *Id*. During the ensuing meeting, Ms. White struck the plaintiff in the face. Compl. ¶ 15.

Chief Sewell allegedly did not stop the assault and "took no action" against Ms. White. Compl. ¶ 16. He then escorted Ms. White out of the police station. Compl. ¶ 17. Chief Sewell, "[o]nce outside of the police precinct, called into patrol officers at the precinct and issued a directive that Plaintiff Mills was to be detained in the facility." Compl. ¶ 18.

Defendants Bailey and Barnes, two officers with Pocomoke City Police, prevented the plaintiff from leaving, allegedly assaulting her, and then eventually detaining her in lockup within the police precinct. Compl. ¶¶ 20-39. The Complaint does not allege that Chief Sewell knew about the assault, nor does it allege any facts to show that he authorized, ordered, directed, or ultimately ratified the fight.

Chief Sewell returned sometime after the plaintiff alleges she was assaulted and detained by Defendants Bailey and Barnes. Compl. ¶ 40. The plaintiff asserts that she made a call to the Worcester County Sheriff's Department, requesting medical assistance. Compl. ¶ 39. She further asserts that medical personnel arrived at the police station in response to her call, but that Chief Sewell advised them that the plaintiff was detained and was not free to leave. Compl. ¶ 40. The plaintiff makes no allegation about the extent or severity of her alleged injuries, nor

does the plaintiff allege that Chief Sewell prevented the paramedics or medical personnel from treating the plaintiff within lockup.

The Complaint alleges five counts against all of the defendants:

- Count I: Violation of 42 U.S.C. § 1983 (alleging unlawful search, seizure, detention, deprivation of liberty, excessive force, denial of necessary medical treatment, and summary punishment)

- Count II: Battery

- Count III: False arrest

- Count IV: False imprisonment

- Count V: Violation of the Maryland State Declaration of Rights (alleging excessive force)

The plaintiff alleges that Chief Sewell was "acting within the scope and course of his employment" at "all times relevant to the instant Complaint." Compl. ¶ 7. The plaintiff has sued him both "independently and in his official capacity." *Id*.

## STANDARD

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2007) (citations omitted).

In evaluating the complaint, the court need not accept unsupported legal allegations, *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), nor must it agree with legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 678, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*,

604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Institute of Tech.*, 950 F.2d 13, 22 (1st Cir. 1991).

## ARGUMENT

### *The Federal Claims*

We start with the plaintiff's Section 1983 claim. Section 1983 does not, by itself, provide substantive rights. Instead, it is a "method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Thus, to state a claim under Section 1983, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

Qualified immunity, under Section 1983, shields government officials performing discretionary functions from personal-capacity liability for civil damages, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985). Government officials are entitled to the defense of qualified immunity unless a § 1983 claim satisfies the following two-prong test (the "qualified immunity test"): (1) the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was of a "clearly established" right "of which a reasonable person would have known." *See Mellen v. Bunting*, 327 F.3d 355, 365 (4th Cir. 2003) (citing *Hope v. Pelzer*, 536 U.S. 730 (2002).

The analysis is a two-step approach. The first question is whether the plaintiff has plausibly stated a violation of a constitutional right. If not, then the inquiry ends. If the plaintiff

has plausibly stated a claim, then we turn to the second question: whether the plaintiff has stated sufficient facts to overcome qualified immunity. *See, e.g.*, *Morse v. Frederick*, 551 U.S. 393, 400 (2007) (expressly declining to decide the case on qualified immunity grounds based on the conclusion that no constitutional violation occurred); *Groh v. Ramirez*, 540 U.S. 551, 563 (2004) ("Having concluded that a constitutional violation occurred, we turn to the question whether petitioner is entitled to qualified immunity despite that violation."); *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (expressing "no view as to the correctness of the Court of Appeals' decision on the constitutional question" because, in any event, "the Court of Appeals was wrong on the issue of qualified immunity"); *see also id.* at 601 (Breyer, J., concurring) (noting that lower courts are required "to decide (1) the constitutional question prior to deciding (2) the qualified immunity question").

The plaintiff claims a general deprivation of "constitutional rights," noting that she had "rights afforded to her by the Fourth and Fourteenth Amendments" "not to have her person or property unlawfully searched, seized, or detained in an unreasonable manner; not to be deprived of her liberty without due process of the law; not to be subjected to excessive force during the course of an arrest; not to be unreasonably denied necessary medical treatment; and not to be summarily punished." Compl. ¶ 54. Immediately, this Court can discard allegations of improper searching of her or her property, since nowhere does the plaintiff complain of an improper search. It is not entirely clear to us what she means by being "summarily punished" either, and so we would submit that may be disregarded as well. What therefore remains is unlawful detention of the plaintiff, excessive force, and denial of necessary medical treatment. We take each of these claims in turn.

First, we discuss the applicable legal standard as to the unlawful detention claim under §

1983. In a § 1983 action, the court determines the lawfulness of an arrest under the law of the

state in which the police made the arrest. *Harrison v. Prince William Cty. Police Dep't*, 640 F.

Supp. 2d 688, 701 (E.D. Va. 2009) (quoting *Robinson v. Goff*, 517 F. Supp. 350, 353-54 (D. Va.

1981)). The elements of false arrest under Maryland law are: "(1) the deprivation of the liberty

of another; (2) without consent; and (3) without legal justification." *Heron v. Strader*, 361 Md.

258, 264, 761 A.2d 56 (Md. 2000) (internal citations omitted). Legal justification is the

"equivalent to legal authority" to arrest. *Green v. Brooks*, 725 A.2d 596, 605 (Md. Ct. Spec. App.

1999). The test of legal justification in the context of false arrest is "'judged by the principles

applicable to the law of arrest,'" *Montgomery Ward v. Wilson*, 664 A.2d 916, 926 (Md. 1995)

(quoting *Ashton v. Brown*, 660 A.2d 447, 472 (Md. 1995)), such as the need for officers to have

probable cause to conduct a warrantless arrest, *Maryland. v. Wallace*, 372 Md. 137, 812 A.2d

291, 297 (Md. 2002). For purposes of the motion to dismiss, we treat this qualified immunity

basis of dismissal as a "facial" attack of the allegations. That is, in this discussion, we will treat

the allegations of fact as true.

The plaintiff's allegations of fact are sparse. She alleges that she was called in for a

mediation, struck by another person, and then that the Chief instructed unnamed patrol officers to

detain her. The Complaint also alleges that Chief Sewell and Ms. White were in a romantic

relationship.[1] There is, however, no indication about what transpired during the meeting. There

are no allegations about the plaintiff's conduct (or absence of conduct). Instead, the Complaint

is silent as to Ms. Mills' conduct. In short, aside from being struck, the plaintiff says nothing

about what the Chief observed or did not observe.

---

[1] Chief Sewell denies this allegation, but for purposes of this motion to dismiss, treats it as true.

The absence of facts here invites exactly the kind of speculation that is impermissible under the plausibility standard of *Twombly* and *Iqbal*. *Twombly* and *Iqbal* articulated a context-dependent standard for determining the sufficiency of claims. As stated in *Iqbal* and *Twombly*, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between the possibility and plausibility of entitlement to relief." *Id*. (internal quotations omitted).

Thus, what is required is the allegation of facts that, based on "judicial experience and common sense," shows legally cognizable wrongdoing as the explanation for events narrated in the complaint. *Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will [ . . . ] be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). A narrative for which a lawful explanation is as likely or more likely to be an explanation for the events will show that a plaintiff has failed to articulate a plausible entitlement to relief. *Id*. at 679 ("But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not 'show[n]' - - 'that the pleader is entitled to relief.'" (quoting FED. R. CIV. P. 8(a)(2)).

Such is the case here. In this vacuum, we are left to speculate. With respect to her claim of being unlawfully detained, the plaintiff fails to plead any facts from which one may ascertain that Chief Sewell did not possess a lawful justification for issuing a directive to detain her in the facility. The Complaint pleads no facts to show that Defendants Barnes and Bailey operated at

his direction or, for that matter, precisely what the scope of his directive was.[2]  While the plaintiff pleads that Chief Sewell was in an alleged relationship with Ms. White, that does not give rise to a plausible, actionable inference.  Here, the plaintiff's complaint is bereft of context, denying the Court a meaningful contextual analysis of what a reasonable officer might believe. Context is of paramount importance in a § 1983 action because, by its very nature, § 1983 demands a contextual analysis to determine whether a lawful justification existed or whether actions were reasonable.

It might be somewhat different if the plaintiff alleged that she did nothing at all during the meeting, and perhaps the plaintiff now would like this Court to infer this from the facts that she has omitted.  But there is no predicate for that, only silence, and there is a difference.  Here there is no allegation of fact either way about her conduct, thus requiring the Court to do the plaintiff's "homework," which case law explicitly prohibits. *McCoy*, 950 F.2d at 22.

To further illustrate this point, suppose (in the scenario posited by the Complaint) the plaintiff provoked Ms. White to strike her by threatening bodily harm.  Or suppose the plaintiff struck Ms. White in retaliation.  Or suppose the plaintiff struck Ms. White first.  Common sense and experience suggest that assaults typically do not happen unprovoked in a vacuum.  While the plaintiff repeats multiple times that there was no legal justification for her detention, that, of course, is not only a legal conclusion but also not particularly helpful in determining what inferences one should draw about Chief Sewell's understanding as to whether he had lawful justification for detaining the plaintiff or whether it would have been apparent to a reasonable

---

[2] The allegations suggest that Defendants Barnes and Bailey were unaware of the alleged directive to detain the plaintiff.  Defendant Bailey appeared to not know why the plaintiff was in the police station, and Defendant Barnes' reaction also suggests that she was unaware of what was going on.  Compl. ¶ 20 ("Defendant Bailey [ . . . ] asked Plaintiff Mills why she was present at the police station."; ¶ 23 ("Defendant Barnes asked Plaintiff Mills what the commotion was about.").

officer that the detention was unlawful. The gets not only at the failure to state a Section 1983 claim, it also shows the plaintiff's inability to overcome qualified immunity.

*S.P. v. City of Takoma Park* illustrates how the plaintiff's Complaint fails to overcome qualified immunity. In *City of Takoma Park*, the Fourth Circuit affirmed Rule 12(b)(6) motions to dismiss on behalf of individual officers. In so doing, the Fourth Circuit determined that the plaintiff failed to sufficiently plead facts to overcome qualified immunity: "In other words, to establish liability, [Plaintiff] had to allege facts demonstrating that the established contours of probable cause were sufficiently clear at the time of the seizure such that the unlawfulness of the officers' actions would have been apparent to reasonable officers." *S.P. v. City of Takoma Park*, 134 F.3d 260, 266 (4th Cir. 1998).

The Fourth Circuit noted that in order to defeat a qualified immunity defense, the plaintiff had to "show that the right allegedly violated was clearly established in more than just a general sense." *Id.*; *see also Cullinan v. Abramson*, 128 F.3d 301, 310 (6th Cir. 1997) (holding that "it is not determinative . . . that the plaintiff has asserted the violation of a broadly stated general right" (citation omitted)). The Fourth Circuit noted that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *City of Takoma Park*, 134 F.3d at 266 (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)). This is because "[t]he basic purpose of qualified immunity [ . . . ] is to spare individual officials the burdens and uncertainties of standing trial in those instances where their conduct would strike an objective observer as falling within the range of reasonable judgment." *Id.*

While *City of Takoma Park* dealt with the involuntary commitment of the plaintiff for mental health issues, the framework and reasoning apply here. It is the plaintiff's burden to

adequately plead the violation of a clearly established right, not seek to impose a burden upon a defendant to guess.

The excessive force claim (and battery claim for that matter) are similarly defective. The plaintiff fails to allege any facts from which one could infer that Chief Sewell knew of, ratified, or otherwise conspired with others to commit an unlawful assault.

A claim for excessive force is determined by whether the force to effect the seizure was "reasonable." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *id*. (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)), and thus must be considered on the basis of the facts and circumstances of each case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

We need not engage in a reasonableness analysis because the plaintiff fails to allege sufficient facts to demonstrate that the Chief participated in any way in the alleged assault. In conclusory fashion, the plaintiff alleges that "Defendant Sewell orchestrated, encouraged, and/or ratified an ensuing encounter between Plaintiff Mills and Defendants Bailey and Barnes." Compl. ¶ 19. The conclusory nature is apparent from the absence of any allegations of fact about this purported orchestration, encouragement, "and/or" ratification.[3] Nowhere in the Complaint is there an allegation that he even communicated with Defendants Bailey and Barnes. There is no allegation that Chief Sewell directed officers to beat or assault the plaintiff. Nowhere in the Complaint is there any allegation that he knew about the fracas that occurred after he had left.

---

[3] The allegation itself is written in the conjunctive and disjunctive with the usual, perfunctory "and/or." The plaintiff herself appears not to know what she is alleging.

By the plaintiff's own allegations, Chief Sewell was not present for any of the encounter between Defendants Barnes and Bailey and the plaintiff. He was outside the precinct, transporting Ms. White back home during the alleged assault. Compl. ¶¶ 17-18, 40. We make no judgment about the adequacy of the Complaint as to the other defendants, but by sheer point of comparison, the detail with respect to the conduct of Defendants Bailey and Barnes far exceeds that of the allegations against Chief Sewell.

The battery claim fails on its face because there is no allegation whatsoever that Chief Sewell engaged in or caused any unwanted touching of the plaintiff. "A battery occurs when one intends a harmful or offensive contact with another without that person's consent." *Nelson v. Carroll*, 735 A.2d 1096, 1099-100 (Md. 1999) (citing RESTATEMENT (SECOND) OF TORTS § 13 & cmt. d). "The act in question must be some positive or affirmative action on the part of the defendant. A battery may occur through a defendant's direct or indirect contact with the plaintiff." *Id*. (citations omitted).[4] As noted above, none of these elements are pleaded.

It is not clear whether the plaintiff is alleging supervisory liability against Chief Sewell for the alleged assault. At different points in the Complaint, the plaintiff alleges that Chief Sewell "orchestrated," "ratified," or "conspired"[5] with Defendants Bailey and Barnes over the alleged assault. *See* Compl. ¶¶ 19, 49-51. Again, the Complaint alleges no facts in support of these contentions. In the interest of completeness, we also seek dismissal on any Section 1983 theory that Chief Sewell is liable for the assault based on his position as a supervisor.

---

[4] "Indirect" battery refers to when a defendant sets a force in motion with the intent to strike the plaintiff. *See Nelson v. Carroll*, 355 Md. 593, 601, 735 A.2d 1096, 1100 (Md. 1999) ("Likewise, an indirect contact, such as occurs when a bullet strikes a victim, may constitute a battery."). In any case, as argued above, there are no facts showing even intent, let alone contact, directly or indirectly.

[5] The plaintiff, also notably, does not allege civil conspiracy.

A plaintiff asserting a § 1983 claim against a supervisory official in his individual capacity must show that the supervisor was personally involved in the alleged constitutional deprivation. *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001). Personal involvement can be demonstrated in one of the following ways:

> (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to others' rights by failing to act on information indicating that unconstitutional acts were occurring.

*Houghton v. Cardone*, 295 F. Supp.2d 268, 276 (W.D.N.Y. 2003) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

There are no facts in the Complaint supporting any of these theories as to Chief Sewell. Moreover, "A plaintiff cannot base liability solely on the defendant's supervisory capacity or the fact that he held the highest position of authority within the relevant governmental agency or department." *Bradley v. Rell*, 703 F. Supp. 2d 109, 123-24 (N.D.N.Y. 2010) (citations omitted). "Rather, a plaintiff must allege facts describing the defendant's personal involvement; a complaint that merely alleges a conclusion of personal involvement, with no supporting factual allegations, fails to satisfy the notice pleading standard of a civil rights complaint." *Id.* (citations omitted). So too here.

Finally, we address the plaintiff's claim of denial of necessary medical treatment as an alleged Fourth and Fourteenth Amendment violation. The Fourth Circuit has stated that a detainee makes out a due process violation for deprivation of medical services where he shows "deliberate indifference to serious medical needs." *Martin v. Gentile*, 849 F.2d 863, 871 (4th

Cir. 1988) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976)).  There is no showing of serious medical needs or deliberate indifference here.

First, there is no showing of serious medical needs.  The plaintiff's own assertion that she requested emergency medical treatment, absent more, is insufficient.  There must be facts to show that medical treatment is needed and being unduly withheld or obstructed.  The plaintiff alleges that she "felt lightheaded and was bleeding following this encounter," Compl. ¶ 32, but there is no allegation about the severity or extent of these injuries or why this would pose a "serious medical need."

Nor is there any showing of deliberate indifference on the part of Chief Sewell.  Even if one were to infer that the Plaintiff suffered serious injuries as a result of alleged assault by Defendants Barnes and Bailey, there is no allegation that Chief Sewell knew or was aware that the plaintiff was injured or actually in need of medical care.  Furthermore, there is no allegation that Chief Sewell objected to other forms of medical treatment (such as treating her within lockup or on the premises at the precinct versus at the hospital) or why treating the plaintiff on the premises was not feasible.

Additionally, the plaintiff cannot overcome Section 1983 qualified immunity as to Chief Sewell based on these allegations.  Absent detail about what injuries the plaintiff suffered that required medical treatment, there is no basis from which to determine that Chief Sewell's decisions were unreasonable or otherwise in violation of a clearly established right.

*The State Claims*

We then turn to the state law claims of battery, false arrest, and false imprisonment.  The discussion above shows why the plaintiff has failed to state a claim as to these torts.  These claims also should be dismissed on the basis of qualified immunity under Maryland law.  Under Sections 5-507 and 5-401 of the Maryland Code, public officials enjoy immunity in the absence

of malice. *Thomas v. City of Annapolis*, 688 A.2d 448, 456 (Md. Ct. Spec. App. 1997). Both statutes apply to intentional torts. *Id*. at 459. Chief Sewell was the Chief of Police of the Pocomoke City Police Department during the time of the incident alleged in the Complaint and therefore the above-quoted sections apply to him. The critical inquiry therefore is whether the plaintiff has sufficiently alleged that Chief Sewell acted with malice.

"[Actual] malice is established by proof that the defendant-officer 'intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff.'" *Town of Port Deposit v. Petetit*, 688 A.2d 54, 62 (Md. Ct. Spec. App. 1997).

A conclusory allegation that a public official acted "maliciously," without supporting allegations of fact, is insufficient to defeat a motion to dismiss on the ground of public official immunity. *Carder v. Steiner*, 170 A.2d 220, 222 (Md. 1961), *overruled on other grounds by James v. Prince George's Cty.*, 418 A.2d 1173, 1178 n.9 (Md. 1980).

The plaintiff alleges Chief Sewell was in a relationship with Ms. White but does not provide other facts from which to plausibly infer that he was motivated by that alleged relationship in an "evil or rancorous" way. *Thacker v. City of Hyattsville*, 762 A.2d 172, 189 (Md. 2000). As mentioned above, the plaintiff's silence here is fatal because the facts are so lacking as to prevent any contextual analysis.

The plaintiff's claims under the Maryland Declaration of Rights should also be dismissed for failure to state a claim. The plaintiff arguably only asserts a claim of excessive force under her Declaration of Rights count. *See* Compl. ¶79 ("Plaintiff Mills was deprived of rights and immunities secured to her under the Maryland Declaration of Rights – in particular, her right not to be subjected to excessive force during the course of an ongoing arrest."). In any case, the

14

plaintiff's claims under the Maryland Declaration of Rights are essentially the same as her other claims, except asserted under as a Maryland constitutional tort. For the same reasons stated above, the plaintiff fails to state a claim.[6]

*Lack of Notice*

Finally, we submit that the plaintiff has failed to provide sufficient notice, as required under Section 5-304 of the Local Government Tort Claims Act (the "LGTCA"). Section 5-304(b)(2) states, "The notice shall be in writing and shall state the time, place, and cause of the injury." In addition, Section 5-304 requires that the notice must be brought within 180 days after the injury and served on the county commissioners or county council.

Paragraph 5 of the Complaint alleges that notice of the claims was posted on August 4, 2015, that the City Council for Pocomoke City received the notice letter on August 6, 2015, and that Lieutenant Craven of the Pocomoke City Police Department acknowledged receipt of the plaintiff's notice of claims during an Internal Affairs investigation.

The Complaint does not append any of the referenced documents or the Internal Affairs complaint and does not set forth the content of any of those documents. Through the LGTCA, we obtained what appears to be the notice letter, attached to this memorandum as Exhibit 1.

The notice letter fails to adequately describe the "time, place, and cause of the injury." It states, "From the events of May 21, 2015, Ms. Mills was caused to suffer the following, to wit: cuts, bruises, choking, beatings, pain and suffering, all requiring medical attention as a result which is continuing to date." It fails to describe any place whatsoever. As for the "cause," all it states is that the plaintiff intends to "file an action for damages as a result of the actions of the

---

[6] The Maryland Court of Appeals has indicated that qualified immunity for public officials does not extend to violations of the Maryland Declaration of Rights. *See Richardson v. McGriff*, 762 A.2d 48, 90 (Md. 2000)

Pocomoke City Police Department beginning on May 21, 2015 in Pocomoke City, Maryland and continuing to date." Ex. 1.

The notice provision of the LGTCA "applies to all torts without distinction, including intentional and constitutional torts." *Thomas v. City of Annapolis*, 688 A.2d 448 (Md. Ct. Spec. App. 1997); *see also Ashton v. Brown*, 660 A.2d 447, 465 n.19 (Md. 1995) (holding that the LGTCA applies to constitutional torts).

"The purpose of the notice requirement is to apprise local governments of possible liability at a time when they can conduct their own investigation into the relevant facts, while evidence and the recollection of witnesses are still fresh." *Huggins v. Prince George's Cty.*, 683 F.3d 525, 528 (4th Cir. 2012). "Thus, substantial compliance will occur when the local government receives actual notice such that it is given the opportunity to properly investigate the potential tort claim," *Id.*, leading here to the question whether the plaintiff provided sufficient notice to investigate the claim. It is evident from Exhibit 1 that she did not do so. There is nothing in the record about her purported Internal Affairs complaint. This event allegedly occurred in May 2015, over three years ago. The LGTCA's notice provision is designed to preclude the assertion of claims precisely like this one, that are based almost entirely on witness recollection and where documents or other evidence are not likely to exist.

//

//

//

//

//

//

**CONCLUSION**

Based on the foregoing, we respectfully request that the Complaint be dismissed.

Date:   July 16, 2018                    Respectfully submitted,

                                                  */s/ Lloyd Liu*
                                                  Lloyd Liu
                                                  Federal Bar No. 18500
Tel: (202) 470-1689
lloyd@coburngreenbaum.com
Barry Coburn
Federal Bar No. 07910
barry@coburngreenbaum.com
COBURN & GREENBAUM PLLC
1710 Rhode Island Ave, N.W.
2nd Floor
Washington, DC 20036

*Counsel for Defendant Kelvin Sewell*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of July 2018, I caused to be delivered a true and accurate copy of the foregoing through the electronic case filing system to:

> Anton L. Iamele, Esq.
> 201 North Charles Street
> Suite 400
> Baltimore, MD 21201
>
> *Counsel for Plaintiff Anna Mills*

> _/s/ Lloyd Liu_ _____
> Lloyd Liu